UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

RONNIE J. KNIGHT,

Defendant.

**DECISION AND ORDER**
10-CR-128S
10-CR-144S (1)

## I. INTRODUCTION

Presently before this Court is Defendant Ronnie J. Knight's Motion for Compassionate Release, which the government opposes. See 18 U.S.C. § 3582 (c)(1)(A). For the reasons discussed below, Knight's motion is granted, and he is ordered immediately released from FCI Bennettsville.

## II. BACKGROUND

On December 23, 2009, the government filed a criminal complaint in 10-CR-144S against Knight and his co-defendant charging them with manufacture of methamphetamine, cultivation of marijuana, possession with intent to distribute and distribution of methamphetamine and marijuana, and conspiracy to commit the offenses. (10-CR-144S, Docket No. 1.) While that complaint was pending, the government filed a separate, single-count information against Knight in 10-CR-128S, charging him with conspiring between December 8 and 29, 2009, to manufacture, to possess with intent to distribute, and to distribute a mixture and substance containing methamphetamine, in violation of 21 U.S.C. § 846. (10-CR-128S, Docket No. 1.) Several days later, on May 19, 2010, the grand jury returned an indictment in 10-CR-144S, charging Knight and his co-defendant with multiple controlled substances offenses, including the offense charged

1

against Knight in the criminal complaint in 10-CR-128S.  (10-CR-144S, Docket No. 1.) Thereafter, the case against Knight proceeded in 10-CR-144S, and the criminal complaint against him in 10-CR-128S was dismissed.

On September 20, 2010, Knight pleaded guilty in 10-CR-144S to conspiring to manufacture, to possess with intent to distribute, and to distribute a mixture and substance containing methamphetamine, in violation of 21 U.S.C. § 846.  (10-CR-144S, Docket Nos. 28, 29.)  Approximately four months later, on January 10, 2011, this Court sentenced Knight to 188 months' imprisonment, 6 years' supervised release, a $100 special assessment, and no fine, fees, or costs.  (10-CR-144, Docket Nos. 41, 44.)  Knight is presently serving his sentence at FCI Bennettsville, with a release date of January 9, 2024.[1]

On April 20, 2020, Knight filed a pro se motion for compassionate release under 18 U.S.C. § 3582 (c)(1)(A)(i) in 10-CR-128S, rather than in the case he was sentenced in—10-CR-144S.  (10-CR-128S, Docket Nos. 677, 690.)  Since full briefing occurred in 10-CR-128S, this Court will cite those docket entries, but will file this Decision and Order in both 10-CR-128S and 10-CR-144S to ensure accuracy of the overall record.

### III. DISCUSSION

**A.    Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act

---

[1] See https://www.bop.gov/inmateloc/ (last visited September 15, 2020).

of 2018,[2] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020). If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute. See 18 U.S.C. § 3582 (c)(1)(A)(i);

---

[2] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion. See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions. See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, 614-15 (S.D.N.Y. 2020) (same).

see also United States v. Gileno, 448 F. Supp. 3d 183, 185 (D. Conn. 2020).

The statutory exhaustion requirement is mandatory and "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)); United States v. Cassidy, 17-CR-116S, 2020 WL 1969303, at *3-8 (W.D.N.Y. Apr. 24, 2020) (finding exhaustion mandatory). The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, [3] or (2) 30 days lapse from the date the warden of the defendant's facility receives the defendant's request to file such a motion on his or her behalf. See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i). See 28 U.S.C. § 994 (t). The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582

---

[3] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf. 28 C.F.R. § 571.61 (a). Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director. Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."). Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel. Id. § 542.15 (a). A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

(c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines. The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons". See U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons" examples. The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other]

reasons described."[4]  Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision.  It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that

> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559 (c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g); and
>
> (3) the reduction is consistent with this policy statement.

See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction.  See Gileno, 448 F. Supp. 3d at 186.

## B. Knight's Motion for Compassionate Release

### 1. Exhaustion of Administrative Rights

---

[4] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A).  See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited September 15, 2020)). This Court assumes without deciding that this Program Statement is non-binding as it relates to the "Other Reasons" provision of U.S.S.G. § 1B1.13 comment n. 1 (D), and that it is therefore not constrained by what the Director of the Bureau of Prisons might consider other extraordinary and compelling reasons for sentence reduction.  See, e.g., United States v. Marks, 03-CR-6033L, 2020 WL 1908911, at *5-7 (W.D.N.Y. Apr. 20, 2020) (finding that post-First Step Act, district courts are no longer bound by the specific categories warranting sentence reduction identified by the Sentencing Commission in U.S.S.G. § 1B1.13, including affording any deference to the Director for purposes of U.S.S.G. § 1B1.13 comment n. 1 (D) ("Other Reasons")).

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement.  To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

For reasons discussed at length in two previous decisions (fully incorporated herein), this Court has found that the statutory exhaustion requirement is mandatory and cannot be excused.  See Cassidy, 2020 WL 1969303, at *3-8; United States v. Schultz, 17-CR-193S, 2020 WL 1872352, at *3-6 (W.D.N.Y. Apr. 15, 2020); accord United States v. Montanez, 15-CR-122-FPG, 2020 WL 2183093, at *2-11 (W.D.N.Y. May 5, 2020) (finding § 3582 (c)(1)(A)'s exhaustion requirement mandatory).

Here, Knight submitted his request for compassionate release to the warden of FCI Bennettsville on April 28, 2020.  (Docket No. 9, p. 18.)  The warden denied his request on May 18, 2020.  (Id. p. 17.)  Thirty days having lapsed since April 28, 2020, this Court finds that Knight has satisfied the statutory exhaustion requirement, and the government does not contend otherwise.  (See Docket No. 12, p. 2 (conceding exhaustion).)

**2. Extraordinary and Compelling Reasons for Sentence Reduction**

Not accounting for any earned good-time credit, Knight has served approximately 129 months of his 188-month sentence.  He is 58 years old and has multiple medical conditions, including arterial hypertension, coronary heart disease, myocardial infarction, and depressive disorder.  (Declaration of Julia Berrios, M.D. ("Berrios Decl."), Docket No.

12-2, ¶ 3.) Knight argues that his medical conditions make him highly susceptible to severe illness from COVID-19. If released, Knight plans to live with his wife in Hot Springs, Arkansas. (Docket No. 9, p. 14.)

Knight does not describe his medical conditions in much detail. He represents that he suffers from "pre-existing heart conditions" (Motion for Compassionate Release, Docket No. 4, p. 2); hypertension and heart condition (Supplemental Submission, p. 1); and mental health issues (id. p. 12). And he maintains that the BOP is not housing him in the proper care level facility, a fact that the government confirms.

The government has submitted a declaration from Knight's treating physician, Dr. Julia Berrios, who is the Medical Officer at FCI Bennettsville. (Berrios Decl., ¶¶ 1-2.) Dr. Berrios confirms Knight's cardiac and psychological conditions, and explains that Knight is a Care Level Two inmate, which means that he is "a stable outpatient requiring quarterly evaluation and whose health conditions can be controlled by medication." (Id. ¶ 3.) But Knight is not being held in a Care Level Two facility. FCI Bennettsville is a Care Level One facility. (Id.) Nonetheless, Dr. Berrios contends that Knight continues to receive appropriate care for his conditions and, in addition to Dr. Berrios, is being treated by a community cardiologist (Dr. Block). (Id. ¶ 4.)

Having thoroughly reviewed the record, this Court finds that none of Knight's medical conditions constitute an extraordinary and compelling reason for a sentence reduction under the medical-condition section of U.S.S.G. § 1B1.13. None of the conditions are a terminal illness (i.e., a serious and advanced illness with an end of life trajectory), see U.S.S.G. § 1B1.13 comment n. 1 (A)(i); nor are any a serious condition, impairment, or age-related deterioration that substantially diminishes Knight's ability to

provide self-care, see U.S.S.G. § 1B1.13 comment n. 1 (A)(ii).  See United States v. Korn, 15-CR-81S, 11-CR-384S, 2020 WL 1808213, at *3-6 (W.D.N.Y. Apr. 9, 2020).

As for the "Other Reasons" section of U.S.S.G. § 1B1.13 comment n. 1 (D), which provides for relief if there exist extraordinary and compelling reasons for sentence reduction other than (or in combination with) what is specifically prescribed, Knight argues that his medical conditions make him highly susceptible to contracting and dying from COVID-19.  See United States v. Resnick, 14 CR 810 (CM), 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020) (considering compassionate-release request based on a defendant's high susceptibility to COVID-19 under the "catch-all" provision of U.S.S.G. § 1B1.13 comment n. 1 (D)).

COVID-19 is the sweeping, potentially deadly, worldwide pandemic that required the President of the United States to declare a national emergency on March 13, 2020.  The Centers for Disease Control and Prevention ("CDC") has determined that individuals with certain underlying medical conditions, particularly if not well controlled, are at high risk for severe illness from COVID-19.[5]  See Jones v. Wolf, No. 20-CV-361, 2020 WL 1643857, at *8 (W.D.N.Y. Apr. 2, 2020) (taking judicial notice that "for people of advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality") (quoting Basank v. Decker, 449 F. Supp. 3d 205, 211 (S.D.N.Y. 2020)).  Those medical conditions consist of cancer, chronic kidney disease, chronic obstructive pulmonary disease, immunocompromised state, obesity (body mass index of 30 or higher), serious heart conditions (e.g. heart failure, coronary

---

[5] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited September 15, 2020).

heart disease, cardiomyopathies), sickle cell disease, and Type 2 diabetes melitus.[6] The CDC has also identified medical conditions that *might* make an individual at increased risk for severe illness from COVID-19, including hypertension.[7] Knight is therefore correct that his cardiac conditions put him at increased risk of severe illness from COVID-19.

Some courts have found that inclusion in the high-risk category alone is enough to constitute an extraordinary and compelling reason for a sentence reduction, see, e.g., United States v. Zukerman, 16 Cr. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (collecting cases), but this Court has not.  Rather, it has found, and continues to find, that the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme.  See United States v. Stevens, 04-CR-222S, 2020 WL 2393306, at *6 (W.D.N.Y. May 12, 2020); Korn, 2020 WL 1808213, at *6; see also United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Gold, No. 15-CR-330, 2020 WL 2197839, at *1 (N.D. Ill. May 6, 2020) (finding that COVID-19 does not "warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease"); United States v. Gagne, No. 3:18-cr-242

---

[6] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited September 15, 2020).

[7] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited September 15, 2020).

(VLB), 2020 WL 1640152, at *4 (D. Conn. Apr. 2, 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree"); United States v. Eberhart, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) ("[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13"); United States v. Zywotko, Case No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (denying compassionate release where "the BOP has implemented an action plan to mitigate the effect of COVID-19 and prevent potential transmissions into and throughout its correctional facilities"); Gileno, 448 F. Supp. 3d at 188 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

The Bureau of Prisons has experience combatting infectious diseases and has developed and implemented a multi-point plan to battle COVID-19. Preparations began in early 2020 when the Bureau of Prisons instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19.[8] This plan is based on guidance and directives from the World Health Organization, the CDC, and other related agencies. Under this plan, the Bureau of Prisons has implemented quarantine and isolation protocols, restricted inmate transfers, reduced overcrowding, limited group gatherings,

---

[8] See https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited September 15, 2020).

employed screening procedures, and suspended visitation and tours.[9]  These and other measures are constantly reassessed to further mitigate the exposure and spread of COVID-19 among the federal prison population.  While indications are that adherence to this plan has generally served Bureau of Prisons facilities fairly well, FCI Bennettsville has experienced a significant number of cases, with 91 inmate and 17 staff cases, of which 65 inmates and 5 staff members have recovered.[10]

Having considered the entire record, this Court is persuaded that Knight has demonstrated an extraordinary and compelling reason for a sentence reduction due to COVID-19.  First, as a 58-year-old man with documented medical conditions, including arterial hypertension, coronary heart disease, myocardial infarction, and depressive disorder, Knight has demonstrated that he is at heightened risk for severe illness from COVID-19.  Second, Knight is housed in a facility with a significant number of positive cases, and numbers there appear to be on the rise.  Third, Knight has demonstrated, and the government concedes, that his incarceration at FCI Bennettsville is incommensurate with his medical condition.  Knight is a Care Level Two inmate, yet the Bureau of Prisons is inexplicitly holding him in a Care Level One facility, with no foreseeable transfer due to the COVID-19 outbreak.  (Berrios Decl., ¶ 3.)  This mismatch sufficiently calls into question the Bureau of Prisons' ability to adequately treat Knight if he contracts COVID-19, particularly if he contracts a severe case of the potentially lethal disease.  Accordingly, Knight demonstrates an extraordinary and compelling reason for a sentence reduction based on COVID-19.

---

[9] See https://www.bop.gov/coronavirus/covid19_status.jsp (last visited September 15, 2020).

[10] https://www.bop.gov/coronavirus/ (last visited September 15, 2020).

### 3. Consideration of the § 3553 (a) Factors

Having found extraordinary and compelling reasons for a sentence reduction, this Court further finds that those reasons are not outweighed by consideration of the § 3553 (a) factors and that a sentence reduction does not undermined Knight's original sentence. See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 2020 WL 91399, at *7. The § 3553 (a) factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553 (a).

Knight undoubtedly engaged in serious criminal activity. He participated in the sale and manufacture of methamphetamine and marijuana for which he was punished with a 188-month sentence, the lowest sentence in the recommended guideline range of 188-235 months. He has now served more than a decade of straight time, not counting any good-time credit, which itself is a significant sentence. With Knight having served more than two-thirds of his sentence, this Court finds that a reduction to time served does not undermine Knight's original sentence; is fair, just, and reasonable; is consistent with the § 3553 (a) factors; and serves the sentencing goals identified above. Accordingly, consideration of the § 3553 (a) factors does not outweigh the extraordinary and compelling reasons for a sentence reduction.

### 4. Consistency of a Reduction with U.S.S.G. § 1B1.13

Finally, a sentence reduction must be consistent with U.S.S.G. § 1B1.13, which

having already found extraordinary and compelling circumstances, essentially means that this Court must determine whether Knight is a danger to the safety of any person or to the community.  See 18 U.S.C. § 3582 (c)(1)(A) (requiring that any sentence reduction be consistent with applicable policy statements issued by the Sentencing Commission); U.S.S.G. § 1B1.13 (2).

Although Knight is a career offender and qualifies as a criminal history category VI, he has been incarcerated for the past 11 years and is now a 58-year-old grandfather in ill health.  He has programmed well in the Bureau of Prisons, and there is nothing in the record to suggest that Knight poses a present danger to society or any person if released, nor does the government demonstrate as much.  (Docket No. 9, pp. 28-31.)  Accordingly, this Court finds that a sentence reduction is consistent with U.S.S.G. § 1B1.13.

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that Knight has demonstrated extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582 (c)(1)(A).  His motion will therefore be granted, and he will be ordered immediately released from FCI Bennettsville.

## V. ORDERS

IT HEREBY IS ORDERED, that Knight's Motion for Sentence Reduction (10-CR-128, Docket No. 4) is GRANTED.

FURTHER, that Knight's sentence is reduced to time served under 18 U.S.C. § 3582 (c)(1)(A).

FURTHER, that the Bureau of Prisons is directed to immediately release Knight

from FCI Bennettsville.

FURTHER, that Knight's term of supervised release will commence immediately upon his release from FCI Bennettsville, subject to the terms and conditions set forth in the judgment (10-CR-144S, Docket No. 44), each of which Knight is ordered to abide by. In addition, Knight is ORDERED to abide by the mental-health condition below:[11]

> The defendant is to participate in a mental health treatment program, including a mental health evaluation and any treatment recommended. The probation officer will supervise the details of any testing and treatment, including the selection of a provider and schedule. If in-patient treatment is recommended, however, it must be approved by the Court unless the defendant consents. The defendant is not to leave such treatment until completion or as ordered by the Court. While in treatment or taking psychotropic medication, the defendant shall abstain from the use of alcohol. The defendant is required to contribute to the cost of services rendered.

FURTHER, that Knight must reside in the Western District of Arkansas at his wife's approved address in Hot Springs, Arkansas, unless another address within the Western District of Arkansas is approved by the United States Probation Office for the Western District of Arkansas.

FURTHER, that Knight must contact U.S. Probation Officer Kristi Constant in the Western District of Arkansas at 501-881-9855 within 24 hours of his release from FCI Bennettsville.

FURTHER, that following his release from FCI Bennettsville, Knight must travel directly to his wife's approved residence in Hot Springs, Arkansas.

---

[11] This Court finds that this mental-health condition is indicated by Knight's bipolar disorder and his diagnoses of schizophrenia and depression. (Presentence Report, ¶ 71.) Moreover, Knight received psychological services while incarcerated and presently maintains that his "mental health is failing and is becoming a [sic] urgent issue." (Docket No. 9, pp. 12, 30-31.) A mental-health condition upon release is therefore required.

FURTHER, that upon arriving at his wife's approved residence in Hot Springs, Arkansas, Knight must self-quarantine for no fewer than 14 days.

SO ORDERED.

Dated:	September 22, 2020
	Buffalo, New York

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge